UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ANTONIO HERNANDEZ-LINCONA,<br>Defendant. | Case No. 3:18-cr-00268-WHO-1<br><br>**ORDER DENYING MOTION TO DISMISS INDICTMENT**<br><br>Re: Dkt. No. 20 |

## INTRODUCTION

Defendant Antonio Hernandez-Lincona was deported in 2015 after serving jail time for committing lewd or lascivious acts on a child in violation of California Penal Code section 288(a). In 2017, he was discovered to have returned to the United States. He now moves to dismiss a federal indictment for illegal reentry on the grounds that the underlying deportation was unlawful because a violation of section 288(a) is not categorically "sexual abuse of a minor" as defined under the Immigration and Nationality Act (the "INA"). While I agree with him that there is no categorical match, his argument fails because I am bound by Ninth Circuit precedent. Hernandez-Lincona also asserts that "sexual abuse of a minor" is void for vagueness, but despite variations in courts' analyses of that term, there are commonalities and core conduct in those holdings that are sufficient to save the phrase. The motion is denied.

## BACKGROUND

Hernandez-Lincona is a 28-year-old citizen of Mexico. In 2011, he pleaded guilty to three counts of statutory rape and one count of lewd or lascivious acts on a child in violation of California Penal Code section 288(a). Abstract Judgment in *People v. Antonio Hernandez-Licona* [sic], Paidipaty Decl. Ex. A [Dkt. No. 27-1]; Probation Report, Paidipaty Decl. Ex. B [Dkt. No.

27-2] (under seal). His conviction rested on sexual activity with two girls, one of whom was 11 years old and became pregnant with his child. *See* Probation Report. On June 25, 2015, after Hernandez-Lincona had spent five years in prison, the Department of Homeland Security removed him to Mexico on the grounds that he had been convicted of an "aggravated felony" as defined by 8 U.S.C. section 1101(a)(43)(A). Final Administrative Removal Order, Paidipaty Decl. Ex. D [Dkt. No. 27-4].

On August 23, 2017, the Humboldt County Drug Task Force found Hernandez-Lincona living in the United States. Report, Paidipaty Decl. Ex. F [Dkt. No. 27-6]; Indictment [Dkt. No. 1]. A federal grand jury returned a one-count indictment against him for illegal reentry in violation of 8 U.S.C. section 1326 on June 19, 2018, and he has been in federal custody since August 28, 2018. *Id*; Writ [Dkt. 4].

On January 31, 2019, Hernandez-Lincona filed a motion to dismiss the indictment pursuant to 8 U.S.C. section 1326(d) on the grounds that his 2015 deportation was unlawful. Motion to Dismiss Indictment ("MTD") [Dkt. No. 20]. I heard argument on March 14, 2019. Because the government had failed to address the merits of Hernandez-Lincona's facial challenge in its opposition, I ordered the parties to provide supplemental briefing on that issue, which is now complete.

## LEGAL STANDARD

Rule 7 of the Federal Rules of Criminal Procedure requires an indictment to be "a plain, concise and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). To be sufficient, an indictment must "(1) contain[ ] the elements of the offense charged and fairly inform[ ] a defendant of the charge against him which he must defend; and (2) enable[ ] him to plead an acquittal or conviction in bar of future prosecutions of the same offense." *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009) (internal quotation marks omitted). However, an indictment that tracks the language of the statute charging the offense should not be dismissed if it unambiguously presents all of the necessary elements of the offense. *United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985). If an indictment fails to include an essential element of the charged offense, it must be dismissed. *United States v. Du Bo*,

2

186 F.3d 1177, 1179 (9th Cir. 1999).

A party may raise "by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1). When considering such a motion, the Court accepts the allegations of the indictment as true. *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993). The indictment "should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *United States v. King*, 200 F.3d 1207, 1217 (9th Cir. 1999) (internal citation marks and citation omitted).

## DISCUSSION

Hernandez-Lincona was indicted for illegal reentry after deportation in violation of 8 U.S.C. section 1326. He moves to dismiss that indictment on the grounds that the underlying removal order was unlawful.

In order to succeed, Hernandez-Lincona must demonstrate that:

> (1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

8 U.S.C.A. § 1326(d). A removal order is "fundamentally unfair" if defects in the underlying deportation proceeding violated the noncitizen's due process rights and caused him prejudice. *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004). If a court concludes that the defendant fails to meet any one of the required showings under § 1326(d), it does not need to analyze those that remain. *See United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1130 n.6 (9th Cir. 2013).

Hernandez-Lincona argues that the removal order underlying his indictment was "fundamentally unfair" for two reasons.[1] First, he was not convicted of an aggravated felony because a conviction under section 288(a) is not categorically "sexual abuse of a minor." Second, "sexual abuse of a minor" is unconstitutionally vague.

---

[1] This Order does not address Hernandez-Lincona's arguments regarding the first two elements, which the government did not oppose.

3

## I. WHETHER THE CONVICTION CONSTITUTES SEXUAL ABUSE OF A MINOR

Under the INA, "Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). Because section 1227 makes noncitizens deportable "based on the nature of their convictions, not based on their actual conduct," courts use a categorical approach to determine whether a particular conviction constitutes an aggravated felony. *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1567–68 (2017); *see Taylor v. United States*, 495 U.S. 575, 602 (1990) (describing the "categorical approach" as the trial court looking "only to the fact of conviction and the statutory definition of the prior offense"). "Sexual abuse of a minor" is one aggravated felony that can provide the basis for an administrative removal. 8 U.S.C. § 1101(a)(43)(A).

There is no dispute that the Ninth Circuit has determined that a conviction under section 288(a) categorically constitutes "sexual abuse of a minor" within the meaning of section 1101(a)(43)(A). But Hernandez-Lincona argues that *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562 (2017) is "clearly irreconcilable" with the Ninth Circuit's reasoning in these prior cases, requiring me to reexamine this question. Although I have questions about the categorical match, I am bound by the later-decided *Quintero-Cisneros v. Sessions*, 891 F.3d 1197 (9th Cir. 2018), where the Ninth Circuit applied the preexisting framework and thus reaffirmed it.

### A. Ninth Circuit Framework

The Ninth Circuit first had occasion to interpret "sexual abuse of a minor"—and decide whether a conviction under section 288(a) categorically constitutes sexual abuse of a minor—in *United States v. Baron-Medina*. 187 F.3d 1144, 1147 (9th Cir. 1999). The court did not explicitly interpret "sexual abuse of a minor." *See id.* at 1146–47. Instead, the opinion focused on the variety of convictions possible under section 288(a), as interpreted by California courts, in order to determine whether the full range of that conduct fell within the scope of the federal term. *See id.* at 1146–47. The elements of section 288(a) are: "(a) the touching of an underage child's body (b) with a sexual intent." *Id.* at 1147. The defendant's intent is key to a conviction: "Even an 'innocuous' touching, 'innocently and warmly received,' violates Section 288(a) if effected with lewd intent." *Id.* (internal citations omitted). The defendant need not even touch the child "if the

4

person, with the requisite intent, coerces the child to touch himself." *Id.* Noting the law's "expansive reach," the Ninth Circuit nonetheless concluded that it punishes abuse because "[t]he use of young children for the gratification of sexual desires constitutes an abuse." *Id.*

After a series of cases that relied on *Baron-Medina*,[2] the Ninth Circuit reaffirmed that "a conviction under California Penal Code section 288(a) . . . constitutes 'sexual abuse of a minor.'" *United States v. Medina-Villa*, 567 F.3d 507, 513 (9th Cir. 2009), *as amended* (June 23, 2009). The court wrote:

> [The line of cases] also clarifies that we separate "sexual abuse of a minor" into three elements: whether the conduct proscribed by the statute is sexual; whether the statute protects a minor; and whether the statute requires abuse. It demonstrates that in our analysis of the conduct covered by section 288(a) and similar statutes, we define the term "abuse" as "physical or psychological harm" in light of the age of the victim in question.

*Id.* The court also rejected the defendant's argument that the intervening decision in *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147 (9th Cir. 2008) abrogated *Baron-Medina*. *Medina-Villa*, 567 F.3d at 515. That decision incorporated the federal definition of "sexual abuse of a minor" found in 18 U.S.C. section 2243, notwithstanding the Ninth Circuit's "explicit rejection" of that definition in *Baron-Medina*. *See id.* But the court determined that the *Estrada-Espinoza* decision "in no way undermine[d]" *Baron-Medina*, nor did it mandate "that § 2243 provides the only relevant definition of the term 'sexual abuse of a minor.'" *Id.* Instead, the later holding "was intended to define statutory rape laws only." *Id.*

There is no dispute that this authority would require me to find a valid underlying deportation based on Hernandez-Lincona's 2011 conviction. But Hernandez-Lincona argues that the Supreme Court's 2017 decision *Esquivel-Quintana v. Sessions* effectively overruled *Medina-Villa* because the two are "clearly irreconcilable." MTD 13–17.

---

[2] In these cases, the Ninth Circuit analyzed whether convictions under certain criminal statutes categorically constituted "crime[s] of violence." *See United States v. Baza–Martinez*, 464 F.3d 1010, 1012 (9th Cir.2006), *reh'g en banc denied*, 481 F.3d 690 (9th Cir.2007); *United States v. Medina-Maella*, 351 F.3d 944, 947 (9th Cir. 2003); *United States v. Pereira-Salmeron*, 337 F.3d 1148, 1155 (9th Cir. 2003).

5

### B. *Esquivel-Quintana v. Sessions*

*Esquivel-Quintana* is the only case in which the Supreme Court has interpreted "sexual abuse of a minor." *See* 137 S. Ct. 1562, 1569 (2017). The Court relied on the normal tools of statutory interpretation and thus began with the language itself. *Id.* It relied on the ordinary meaning of "sexual abuse" in 1996 when Congress added the phrase to the INA: "'the engaging in sexual contact with a person who is below a specified age or who is incapable of giving consent because of age or mental or physical incapacity.'" *Id.* (quoting Merriam–Webster's Dictionary of Law 454 (1996)). It further noted that "of a minor" shows "the INA focuses on age, rather than mental or physical incapacity." *Id.* The Court concluded that "to qualify as sexual abuse of a minor, the statute of conviction must prohibit certain sexual acts based at least in part on the age of the victim." *Id.*

The statute before the Court was California Penal Code section 261.5(c), a statutory rape statute that criminalizes "unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator" and defines "minor" as someone under the age of 18. *Id.* at 1568. In order to determine whether a conviction under the statute was categorically "sexual abuse of a minor," the Court analyzed the least criminal behavior that could support a conviction: consensual intercourse between a victim of almost 18 and a perpetrator of barely 21. *Id.*; *see also Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (noting that the "least of the acts criminalized" must be "encompassed by the generic federal offense") (internal quotation marks and formatting omitted).

The Court proceeded to define sexual abuse of a minor in the context of a statutory rape offense "based solely on the age of the participants," consulting "[t]he structure of the INA, a related federal statute, and evidence from state criminal codes." *Esquivel-Quintana*, 137 S. Ct. at 1570. First, the Court noted that sexual abuse of a minor is listed as an *aggravated* felony along with murder and rape, which "suggests that sexual abuse of a minor encompasses only especially egregious felonies." *Id.* at 1570. Second, the Court relied on section 2243 as evidence,[3] noting that the section criminalizes certain sexual activity with a victim under the age of 16. *Id.* at 1570–

---

[3] The Court did not "import[] wholesale" the section 2243 because while Congress defined some aggravated felonies listed in the INA by reference to provisions from the United States Code, it did not do so for sexual abuse of a minor. *Esquivel-Quintana*, 137 S. Ct. at 1571.

6

71. Congress had enacted a change to section 2243 in "the same omnibus law that added sexual abuse of a minor to the INA," which the Court took as evidence that "Congress understood that phrase to cover victims under age 16." *Id.* at 1570–71. Finally, the Court consulted state criminal codes and found that in 1996 when Congress added sexual abuse of a minor to the INA, "[a] significant majority of jurisdictions . . . set the age of consent at 16 for statutory rape offenses predicated exclusively on the age of the participants."[4] *Id.* at 1571.

For these reasons, the Court determined that "[w]here sexual intercourse is abusive solely because of the ages of the participants, the victim must be younger than 16." *Id.* at 1572. Because California's statutory rape law reached conduct involving an older victim, a conviction under that law did not categorically constitute sexual abuse of a minor. *Id.* at 1568.

### C. Whether *Esquivel-Quintana* Is Clearly Irreconcilable with Ninth Circuit Law

Hernandez-Lincona urges that for three reasons, the theory and reasoning of *Esquivel-Quintana* are clearly irreconcilable with Ninth Circuit law defining "sexual abuse of a minor."[5] MTD 15. First, Ninth Circuit law does not require a "sexual act" for a conviction to constitute "sexual abuse of a minor." *Id.*; *see Esquivel-Quintana*, 137 S. Ct. at 1569 ("[T]o qualify as sexual abuse of a minor, the statute of conviction must prohibit certain sexual acts based at least in part on the age of the victim."). Instead, it merely requires "sexual *conduct*," which Hernandez-Lincona asserts is much broader than "sexual act." *See* MTD at 17–18; *Medina-Villa*, 567 F.3d at 513 (noting as one element "whether the conduct proscribed by the statute is sexual"). Second, in *Medina-Villa* the Ninth Circuit declined to consider section 2243 when interpreting "sexual abuse," whereas *Esquivel-Quintana* instructs that the 1996 version of the statute should be consulted. MTD 16–17. Third, *Esquivel-Quintana* teaches that agreement among states is relevant to defining "sexual abuse of a minor," and in *Medina-Villa* the Ninth Circuit failed to

---

[4] The Court acknowledged that many states alter the age of consent in certain situations, for example where there is a "special relationship of trust" between the victim and perpetrator. *Id.* at 1571–72. That context was not before the Court. *See id.*

[5] The government counters that in *Esquivel-Quintana*, the Supreme Court explicitly cabined its holding to the statutory rape context, while Hernandez-Lincona asserts that such a limit is irrelevant under the *Miller v. Gammie* analysis. Reply [Dkt. No. 30] 8.

7

review state criminal codes.[6] *Id.* at 17. For these reasons, Hernandez-Lincona contends that I must newly analyze whether section 288(a) categorically constitutes "sexual abuse of a minor" and find that it does not.

Where a circuit court opinion is not explicitly overruled by a Supreme Court decision, it may be "effectively overruled" if it is "clearly irreconcilable" with the higher authority. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). The cases may be clearly irreconcilable if the higher authority has "undercut the theory or reasoning" such that it would be impossible to follow both sources of authority faithfully. *See id.* (noting that the issues need not be identical). The bar is high; if the higher authority merely casts doubt or creates tension, circuit precedent still applies. *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012).

Hernandez-Lincona's argument is persuasive, and if I had free rein, I would agree that *Esquivel-Quintana* is inconsistent with the Ninth Circuit's theory and reasoning in *Baron-Medina* and *Medina-Villa* such that the Supreme Court effectively overruled that authority. If I could conduct anew the categorical inquiry under section 288(a) and "sexual abuse of a minor," I would conclude that a conviction under that section is not categorically sexual abuse of a minor because it reaches behavior that falls outside the Supreme Court's interpretation of that term—namely, innocuous touching and even conduct that does not involve touching. *See Baron-Medina*, 187 F.3d at 1147; *see also Esquivel-Quintana*, 137 S. Ct. at 1570 (noting that the structure of the INA "suggests that sexual abuse of a minor encompasses only especially egregious felonies").

But I find that I am constrained by the later-decided Ninth Circuit case *Quintero-Cisneros v. Sessions*, 891 F.3d 1197 (9th Cir. 2018), where the Ninth Circuit considered a challenge to a removal order that was based on a conviction constituting sexual abuse of a minor. *Id.* at 1199. In assessing whether a conviction under the Washington statute categorically fell within the reach of section 1101(a)(43)(A), the court noted that it treats statutory rape offenses as separate from other offenses that might constitute sexual abuse of a minor. *See id.* at 1200. It wrote:

---

[6] Hernandez-Lincona additionally argues that *Baron-Medina* failed to analyze the minimum conduct that could sustain a conviction under the statute, as the Supreme Court later required in *Moncrieffe*. Def. Supp. 8–9; *see Moncrieffe*, 569 U.S. at 191.

8

> We have developed two definitions specifying the elements of the federal generic offense of sexual abuse of a minor. The first definition is not relevant for our purposes, as it applies mainly to statutory rape offenses. *See Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1150, 1152 (9th Cir. 2008) (en banc); *see also Esquivel-Quintana v. Sessions*, ––– U.S. –––, 137 S. Ct. 1562, 1569, 198 L.Ed.2d 22 (2017). The second definition, which applies to all other offenses, is the one we are concerned with here. That definition requires proof of three elements: (1) sexual conduct, (2) with a minor, (3) that constitutes abuse. *United States v. Medina-Villa*, 567 F.3d 507, 513 (9th Cir. 2009).

*Id.*

As is plain from the passage I just quoted, the panel cited *Esquivel-Quintana* and yet proceeded to apply its preexisting framework to the statute before it. *See id.* at 1200–02. It effectively reaffirmed Ninth Circuit law even after *Esquivel-Quintana*. Accordingly, I am bound.

Hernandez-Lincona urges that *Quintero-Cisneros* is not binding on me because the court did not engage in *Miller v. Gammie* analysis and the "passing citation to *Esquivel-Quintana* . . . does not represent a reasoned decision on the issue of *Medina-Villa*'s continued validity post-*Esquivel-Quintana*." Reply [Dkt. No. 30] 3. "Where it is clear that a statement is made casually and without analysis . . . or where it is merely a prelude to another legal issue that commands the panel's full attention," that statement may not bind later Ninth Circuit panels. *United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001); *see also In re Magnacom Wireless, LLC*, 503 F.3d 984, 993–94 (9th Cir. 2007) ("In our circuit, statements made in passing, without analysis, are not binding precedent."). A panel can reconsider issues "cautiously and rarely" and only where it "is convinced that the earlier panel did not make a deliberate decision to adopt the rule of law it announced." *Johnson*, 256 F.3d at 915. But I am a district court judge, not a Ninth Circuit panel.

In my judgment, a panel can and should reexamine the Ninth Circuit's line of cases interpreting sexual abuse of a minor and applying the categorical approach to various statutes in light of *Esquivel-Quintana*. I cannot do so. Given the caution a panel must exercise before reconsidering an issue, a district court should exhibit all the more restraint. *See Johnson*, 256 F.3d at 915. The Ninth Circuit decided *Quintero-Cisneros* in the same context in which I now decide

9

Hernandez-Lincona's motion: whether a non-statutory rape offense categorically constitutes "sexual abuse of a minor" under the INA. *See Quintero-Cisneros*, 891 F.3d at 1199–1200. Thus, the question of which framework to apply—the Ninth Circuit's *Medina-Villa* framework or the Supreme Court's *Esquivel-Quintana* framework—was more than "merely a prelude" to the issue before the panel. *See Johnson*, 256 F.3d at 915. Even if the parties did not brief or argue *Miller v. Gammie* irreconcilability as Hernandez-Lincona asserts, the Ninth Circuit is bound to follow Supreme Court authority just as I am. By applying the preexisting law, the Ninth Circuit affirmed its continued validity.

While I believe that *Esquivel-Quintana* compels a reexamination of the *Medina-Villa* framework and mediates in favor of a finding that a conviction under section 288(a) is not categorically sexual abuse of a minor, *Quintero-Cisnero*'s citation shows that the panel was aware of that authority and yet did not see it as requiring reconsideration of the preexisting mode of analysis. Until the Ninth Circuit says otherwise, its framework is clear. It is binding.

## II. THE VOID-FOR-VAGUENESS CHALLENGE

Hernandez-Lincona argues that he can present a facial challenge to "sexual abuse of a minor" and that I should find the term unconstitutionally vague. The government counters that Hernandez-Lincona can only bring an as-applied challenge, which clearly fails, and that even if I analyze a facial challenge, the phrase should survive.

### A. Whether Hernandez-Lincona Can Bring a Facial Challenge

There is no doubt that if Hernandez-Lincona could only challenge the constitutionality of "sexual abuse of a minor" as applied to his conduct, that challenge would fail. Impregnating an 11-year-old child is appalling and clearly falls under any conceivable definition of the phrase. But recent developments in void-for-vagueness jurisprudence allow Hernandez-Lincona to bring a facial challenge to the law. *See Barbosa v. Barr*, 919 F.3d 1169, No. 15-72092, 2019 WL 1388298, at *5 (9th Cir. Mar. 28, 2019) (Berzon, J., concurring) (noting the recent "revitalization of the void-for-vagueness doctrine").

In *Johnson v. United States*, the Supreme Court considered a vagueness challenge to the federal felon-in-possession statute's residual clause. 135 S. Ct. 2551, 2557 (2015); *see* 18 U.S.C.

§ 922(g). The statute imposed a more severe punishment on a felon found in possession of a firearm if that person had three or more "violent felony" convictions. *Id.* at 2555; *see* 18 U.S.C. section 924(e)(2)(B). "Violent felony" included:

> [A]ny crime punishable by imprisonment for a term exceeding one year ... that—
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." § 924(e)(2)(B) (emphasis added).

*Johnson*, 135 S. Ct. at 2555–56. Prior to *Johnson*, the Court had decided four cases that required it to interpret the italicized portion, known as residual clause, and on two occasions it rejected dissenting opinions that the residual clause was unconstitutionally vague. *See id.* at 2556 (describing each case's holding). But in *Johnson*, the Court declared the clause void for vagueness because it determined that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." *Id.* at 2551.

The Court first noted that the government violates the Fifth Amendment Due Process Clause "by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Id.* at 2556. It concluded that "[t]wo features of the residual clause conspire[d] to make it unconstitutionally vague." *Id.* at 2557. The first was that the act required the use of the categorical approach to determine whether a crime constituted a violent felony. *Id.* The Court noted that the approach "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements," which left courts with "no reliable way to choose between . . . competing accounts" of the circumstances the ordinary case involve[d]. *Id.* at 2557–58.

Second, there was uncertainty about how much risk a crime would have to pose in order to be a violent felony. *Id.* at 2558. The task of determining serious potential risk was made all the more difficult by the need to apply the standard to "a judge-imagined abstraction" rather than

11

"real-world facts." *Id.* Finally, the Court noted as evidence of vagueness its own "repeated attempts and repeated failures to craft a principled and objective standard out of the residual clause" along with the "numerous splits among the lower federal courts." *Id.* at 2558, 2560–61 (internal quotation marks and citation omitted).

In *Sessions v. Dimaya*, the Supreme Court applied *Johnson* to a removal case and found the INA's phrase "crime of violence" unconstitutionally vague. 138 S. Ct. 1204, 1215 (2018). It explicitly rejected the government's argument that "a less searching form of the void-for-vagueness doctrine applie[d]" because of the non-criminal context. *Id.* at 1212. Instead, the Court "long ago held that the most exacting vagueness standard should apply in removal cases," which have become more "intimately related to the criminal process." *Id.* at 1213. The Court found the same flaws as those present in *Johnson*, namely the use of the categorical approach and the uncertainty about the risk standard. *Id.* at 1215–16. It was not persuaded by the government's arguments that the residual clause was distinct because of the "confusing" list of crimes that preceded it. *Id.* at 1221; *see Johnson*, 135 S. Ct. at 2558 (noting the listed offenses were "far from clear in respect to the degree of risk each pose[d]"). The Court noted that the list had not *caused* the residual clause to be vague but rather failed to save it from vagueness because the offenses shed no light on the appropriate risk inquiry. *Dimaya*, 138 S. Ct. at 1221.

In response to Hernandez-Lincona's reliance on these cases, the government primarily relies on authority that predates them. *See* Oppo. 14; *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) ("[F]or a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.") (internal quotation marks and citations omitted). But as the Ninth Circuit recently noted, "to the extent that the State's quotations from *Holder* [and other cases] are inconsistent with *Johnson* and *Dimaya*, those cases may not reflect the current state of the law."[7] *Henry v. Spearman*, 899 F.3d 703, 709 (9th Cir. 2018); *see also Barbosa*, 2019 WL 1388298, at *5 (Berzon, J., concurring) (noting the

---

[7] The Ninth Circuit used the word "may" and did not reach an explicit conclusion on the effect of *Johnson* and *Dimaya* because of the posture of the case before it. *See Henry*, 899 F.3d at 708 (considering a motion for leave to file a second or successive petition for habeas corpus). It was the district court's role to address the claim's merits in the first instance. *Id.*

12

recent "revitalization of the void-for-vagueness doctrine"). The government also asserts that "[t]he Seventh Circuit recently considered this very issue," citing a case in which the court denied a facial challenge despite the defendant's reliance on *Johnson*. *See* Gov't Supp. 1–2; *United States v. Cook*, 914 F.3d 545, 551, 554–55 (7th Cir. 2019). But as the Seventh Circuit made clear, the statute at issue did not "call for the court to engage in any abstract analysis" like the categorical approach but instead required it to "apply the statutory prohibition to a defendant's real-world conduct."[8] *Cook*, 914 F.3d at 553. That case is inapposite here.

*Johnson* and *Dimaya* together establish that individuals facing deportation under a law that employs the categorical approach can bring facial challenges whether or not they would succeed on an as-applied basis.[9] Accordingly, I will consider the merits of Hernandez-Lincona's argument that "sexual abuse of a minor" is void for vagueness.

### B. The Merits of the Facial Challenge

Hernandez-Lincona argues that "sexual abuse of a minor" is unconstitutionally vague because of "the multiple, competing definitions by the BIA, circuit courts, and the Supreme Court." Mot. 24. The Fifth Amendment's Due Process Clause provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. AMEND. V. A law must be declared void, if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson*, 135 S. Ct. at 2556. To satisfy due process a law must (1) "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly" and (2) "provide explicit standards for those who apply them." *See Gaynard v. City of Rockford*, 408 U.S. 104, 108 (1972).

---

[8] The Seventh Circuit noted that it was not clear how much *Johnson* and *Dimaya* "actually expand the universe of litigants who may mount a facial challenge to a statute they believe is vague." *Cook*, 914 F.3d at 553. Given that the Supreme Court's concerns in those cases were not implicated in the case before it, the court did not weigh in on that question.

[9] The dissent in *Dimaya* asserted that an as-applied challenge would fail in that case because Dimaya clearly had notice that his conduct constituted a crime of violence. *Dimaya*, 138 S. Ct. at 1250 (Thomas, J., dissenting). Accordingly, the majority in that case clearly entertained the facial challenge to the law even when the individual bringing it would not have succeeded on an as-applied basis.

13

The Supreme Court provided highly relevant guidance on this question in *Johnson* and *Dimaya*. And just like the felon-in-possession law did, the INA requires courts to apply the categorical approach, meaning that the judicial assessment of the crime is abstracted from the conduct of any one individual. *See Johnson*, 135 S. Ct. at 2557. But only one of the two features that "conspire[d] to make [the residual clause] unconstitutionally vague" is a feature of the phrase at issue here. *See Johnson*, 135 S. Ct. at 2557. In *Johnson*, layered on top of the difficulties associated with the categorical approach was the uncertainty associated with a "qualitative standard" like serious potential risk. *See id.* at 2561; *see also Dimaya*, 138 S. Ct. at 1215 (noting that "substantial risk" was another such qualitative standard). The Court found that the residual clause "[left] uncertainty about how much risk it [took] for a crime to qualify as a violent felony," particularly given that courts had to apply the qualitative standard to a "judge-imagined abstraction." *Johnson*, 135 S. Ct. at 2558. The residual cause thus left courts unmoored, engaging in abstract, hypothetical inquiries two times over—once to determine the ordinary crime and once to assess the seriousness of the risk. *See id.*; *Dimaya*, 138 S. Ct. at 1214 ("The problem came from layering such a standard [serious potential risk] on top of the requisite 'ordinary case' inquiry."). The Court found the residual clause "hopeless[ly] indetermina[te]." *Johnson*, 135 S. Ct. at 2558.

Here, "sexual abuse of a minor" is not a qualitative standard like serious or substantial risk. In addition, the other types of felonies that precede the phrase—murder and rape—ease rather than exacerbate the difficulties of the inquiry. By contrast, in *Johnson* "burglary, arson, extortion, and crimes involving the use of explosives" did not appear to have a common thread or otherwise set forth a clear spectrum of risk, so they could not save the residual clause from unconstitutionality. *Johnson*, 135 S. Ct. at 2558; *see Dimaya*, 138 S. Ct. at 1221 ("Trying to reconcile them with each other, and then compare them to whatever unlisted crime was at issue, drove many a judge a little batty. And more to the point, the endeavor failed to bring any certainty to the residual clause's application."). Murder, rape, and sexual abuse of a minor are all "especially egregious felonies." *See Esquivel-Quintana*, 137 S. Ct. at 1570.

Hernandez-Lincona is correct that courts' interpretations of the phrase have been varied,

and these variations raise concerns even if the language itself seems clear. *See* MTD 24–28; Reply 10–13; Def. Supp. 3–5. Because the categorical approach requires courts to decide whether a state criminal statute fits within the federal definition of a crime, some variation is likely inevitable. The question is whether the differences are so significant that the phrase fails to provide fair notice or is standardless. I do not think so. The government identifies core conduct and commonalities in courts' approaches to the analysis that are sufficient to save the phrase. *See* Gov't Supp. 4 (noting that courts contemplate the infliction of physical or non-physical harm on the minor but do not require actual physical injury and that most courts consider the defendant's intent). Given these commonalities, the differences between this phrase and the residual clause, and the Supreme Court's recent guidance for lower courts, sexual abuse of a minor is not unconstitutionally vague.

## CONCLUSION

Deportation is a serious penalty. Deportation for commission of an aggravated felony under section 1227(a)(2)(A)(iii) is reserved for those who have committed "especially egregious felonies." *See Esquivel-Quintana*, 137 S. Ct. at 1570. Because courts look past the actual conduct of the defendant to the nature of his conviction, there must be a categorical match between the statute of conviction and the federal category that provides the basis for deportation. In his briefing, Hernandez-Lincona raises concerning inconsistencies between Ninth Circuit law and the Supreme Court's recent guidance, and the circuit should address those inconsistencies. But as I explained above, I must DENY Hernandez-Lincona's motion to dismiss the indictment given the relevant precedent.

**IT IS SO ORDERED.**

Dated: April 22, 2019

William H. Orrick
United States District Judge

15